UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JACLYN MCCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 17 CV 2888 DDN |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying in part the application of plaintiff Jaclyn McCallister for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI the Act, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on April 13, 1986 and was 30 years old at the time of her hearing. (Tr. 76, 147.) She filed her applications on July 25, 2014, alleging a January 2, 2012 onset date, subsequently amended to July 15, 2014. (Tr. 148, 274.) She alleged disability due to sleep apnea, and anxiety and bipolar disorders. (Tr. 274.) Her applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 143-47.)

On October 19, 2016, following a hearing, an ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 61-70.) The Appeals Council denied her request for review. (Tr. 1-7.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to this appeal.

On March 14, 2014, plaintiff saw Jeffrey Pevnick, M.D., a psychiatrist, and stated that although Xanax was effective, she felt "more depressed than ever." Mental status exam revealed a depressed and anxious mood, helpless and hopeless feelings, and mildly impaired judgment. Dr. Pevnick diagnosed bipolar I disorder, most recent episode depressed and moderate; panic disorder with agoraphobia; and ADHD. Dr. Pevnick increased Bupropion, an antidepressant, and discontinued Seroquel, an antipsychotic used to treat bipolar disorder. Plaintiff was subsequently dismissed as a patient by Dr. Pevnick for missing appointments. (Tr. 494-95, 661.)

Plaintiff was seen by Thomas J. Nowotony, M.D., a psychiatrist at Mercy Services Sullivan, on August 25, 2014. Her current medications included Seroquel and Xanax. She had fair compliance with treatment. She reported symptoms of auditory hallucinations, visual hallucinations, and paranoia, for six months. She also complained of depressed mood, poor motivation, low energy, psychomotor agitation, and racing thoughts. Her exam revealed depressed mood, flat affect, with good insight and judgment. Dr. Nowotny diagnosed severe recurrent major depression. (Tr. 661-63.)

On September 2, 2014, State agency psychological consultant Steven Akeson, Ph.D., reviewed the available evidence. He concluded, among other things, that plaintiff had moderate limitations in social functioning and in maintaining concentration, persistence, or pace. He indicated she had mild restrictions in her activities of daily

living. He believed that plaintiff might perform better in a work environment away from the general public and that she had the ability to perform at least simple repetitive tasks and likely moderately complex tasks. (Tr. 122-25.)

On October 17, 2014, plaintiff saw Dr. Nowotny for follow-up. Her symptoms included depressed mood, insomnia, psychomotor agitation, and mood swings. Dr. Nowotny started her on Lithium, used to treat bipolar disorder and depression, and Fluoxetine, for depression, and continued Seroquel and Xanax. (Tr. 665-66.)

During a November 10, 2014 visit with Dr. Nowotny plaintiff felt the same. She reported thoughts of death, depressed mood, insomnia, low energy, and mood swings. She acknowledged some minimal improvement. Dr. Nowotny reduced her Xanax due to fatigue and switched her to Seroquel Ir. She was also referred to a therapist for marital discord. (Tr. 669-71.)

On December 1, 2014, plaintiff began psychotherapy with Denise Morgan, licensed professional counselor. She described frustration with the father of her son and her son's recent autism diagnosis. She reported feelings of anhedonia or inability to feel pleasure, agitation, fear, guilt, sadness, worry, and anger. Her thought content was preoccupied and she blamed herself and others. She had decreased appetite and reported missing a Lithium dose. She was distractible and impulsive and had death wishes, stating "I hope I don't wake up." Ms. Morgan diagnosed bipolar disorder, social anxiety, and migraines. She assigned a GAF score of 75, indicating "mild" symptoms. (Tr. 902-04.)

Plaintiff continued to see Ms. Morgan throughout the date of the ALJ's decision. During her subsequent sessions with Ms. Morgan, plaintiff continued to voice concerns relating to her issues with her husband, her pending divorce, and regaining custody of her son. (Tr. 826-908.) On January 28, 2015, plaintiff reported to Dr. Nowotny that about one month earlier she put a gun to her head and pulled the trigger. Her husband locked up the gun and she had not had any suicidal ideation since. She described extreme mood swings. Mental status examination revealed normal attention, logical and sequential form

of thought, normal speech, no suicidal ideations or paranoia, functionally intact memory, and good insight and judgment. Dr. Nowotny increased her Lithium and indicated electroconvulsive therapy (ECT) may be considered. (Tr. 673-75.)

At a February 18, 2015 psychiatric visit, plaintiff complained of depressed mood, terminal insomnia, and paranoid ideation, i.e., being fearful and vigilant that someone is out to harm her. She was lethargic, spoke softly, and had depressed mood and a flat affect. She reported that her symptoms were exacerbated by family discord, including her son's autism diagnosis and marital problems. Mental status examination revealed well-groomed appearance, normal attention, logical and sequential form of thought, no suicidal ideations or paranoia, functionally intact memory, and good insight and judgment. The doctor increased her Seroquel, Fluoxetine, and Lithium. (Tr. 678-79.)

At an April 1, 2015 follow-up with Dr. Nowotny, plaintiff reported she was feeling severely depressed and anxious and was having mood swings. She reported her sister-in-law, with whom she was living, had assaulted her the previous night. She requested ECT. Plaintiff also indicated suicidal ideation with no plan, stating that she thinks of death every day now. She described her symptoms as worsened. Mental status exam revealed slowed psychomotor activity, impoverished flow of thought, slowed rate of production of speech, soft speech, stressed mood, and tearful affect. It also revealed well-groomed appearance, normal attention, logical and sequential form of thought, no suicidal ideations, functionally intact memory, and good insight and judgment. (Tr. 683-84.)

During a July 1, 2015 visit with Dr. Nowotny, plaintiff reported that she was still fighting with her husband, and still had the same living situation. She reported symptoms of suicidal ideation. Her symptoms had been worsening. (Tr. 688.)

Plaintiff was hospitalized at Mercy Hospital from September 9-12, 2015, for acute maxillary sinusitis and a migraine headache. She was treated with antibiotics and pain control. A computed tomography (CT) scan of her head revealed no evidence of intracranial hemorrhage or edema. A treating physician suspected that plaintiff was

progressing from episodic to chronic migraine, although she showed improvement with sleep, improved sinus drainage, and medications. (Tr. 739, 758, 766.) Mental status examination during her hospitalization showed that she was alert, cooperative, attentive, oriented, and had normal memory and fund of knowledge. Her speech and language were normal without sign of cognitive dysfunction. She was pain free upon discharge and released without prescription pain medication. (Tr. 734-75.)

Plaintiff was seen on September 23, 2015 for follow-up. She had been symptom-free for four to five days after her hospitalization, but her migraine started again and continued for three days with associated symptoms of light sensitivity and nausea. She was treated with Toradol for her migraine and prednisone for sinusitis. (Tr. 600-03.)

At a September 30, 2015 visit with Dr. Nowotny plaintiff reported she felt the same. She asked Dr. Nowotny for a letter stating she is unable to work due to her bipolar disorder and severe mood swings, although the court notes the record does not contain such a letter. Plaintiff continued to endorse symptoms of thoughts of death, depressed mood, irritability, and hostility towards her husband and mother. Her Seroquel was increased and she was instructed to get lithium blood tests. (Tr. 693-96.)

Plaintiff saw Dr. Nowotny on December 3, 2015, and reported that she had never been more depressed. Her compliance with medication was poor. She had not completed the blood tests or increased her Seroquel as instructed. She reported that she was volunteering at an animal shelter, had temporary assistance from the state, and that her current situation living with her mother's friend was an improvement over living with her husband. Her symptoms were noted to be exacerbated by marital discord. She had several court hearings and could now only see her son twice weekly with supervised visits. Mental status examination revealed a depressed mood and flat affect, but no suicidal ideations or paranoia, normal attention, functionally intact memory, logical and sequential form of thought, and good insight and judgment. She was instructed to increase Quetiapine, for bipolar disorder. (Tr. 698-700.)

On December 10, 2015, plaintiff was seen at Mercy Services Sullivan for low back and neck pain after she was rear-ended in an accident. Her neck pain increased her migraines and she wanted to try new medications. She was prescribed Cyclobenzaprine, Naproxen, and prednisone, and referred to physical therapy. (Tr. 616-19.)

On December 23, 2015, plaintiff saw Troy A. Dowers, M.D., for respiratory complaints and follow-up on her migraines. She was diagnosed with an upper respiratory infection and migraines. The doctor recommended she continue Imitrex, as needed, for migraines, avoid stress triggers, and start a headache journal. (Tr. 633-36.)

On January 21, 2016, she had continued symptoms of depressed mood with insomnia. Her Fluoxetine was increased. (Tr. 704-06.)

Plaintiff saw Dr. Dowers on March 8, 2016, for migraines that seemed to have worsened since her car accident several months earlier. She had light sensitivity and some nausea. She complained of fatigue, posterior neck pain, back pain, and arm pain. He further noted that she had also been diagnosed with maxillary sinus infection. Plaintiff denied that depression or anxiety was a large component of her migraines. Dr. Dowers administered a Toradol injection and started her on Gabapentin for her neck pain and migraines. He also recommended a headache journal, an exercise program, and to avoid stress if possible. If there was no improvement, Dr. Dowers would consider an MRI and referral to neurology. (Tr. 647-51.)

On March 21, 2016, plaintiff saw Dr. Nowotny, reporting her symptoms of depression and anxiety were about the same. She was still involved in divorce proceedings. (Tr. 710.)

She was seen May 2, 2016 at St. Clare Health Center emergency room for a migraine that had lasted for 5 days with slight nausea. She was generally having headaches three times per week. (Tr. 554.)

Plaintiff saw Dr. Nowotny on May 21, 2016, plaintiff reported her mood was improved except for aggravation with her court case. (Tr. 716.) In June 2016, Ms.

Morgan noted that plaintiff was pleasant, cooperative, and interested, with an appropriate affect. (Tr. 828.)   An MRI of her brain taken June 25, 2016 showed no acute process or significant intracranial abnormality. (Tr. 659.)

**ALJ Hearing**

On June 30, 2016, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 76-115.) She is not able to work due to severe major depression. She lives in a mobile home with a friend of her mother's. She has custody of her four-year-old son nine hours per week. Her son is autistic and attends a special school. (Tr. 81-85.)

She is unable to work due to poor impulse control and severe mood swings. She quit her last job as a cashier because she was overwhelmed by everything, such as the amount of physical labor involved and her boss "breathing down her neck." She is usually too depressed to leave the house. She uses social media on her smartphone. She is able to do chores such as cleaning, dusting, sweeping, and grocery shopping. She receives food stamps. She is able to drive and has a valid driver's license. She believes she would have difficulty getting motivated and having enough energy to perform certain work such as housekeeping. (Tr. 88-100.)

She currently takes Seroquel at night. She is able to sleep about four to five days per week and is awake with anxiety the other nights. She is very tired and sleeps during the days following the nights she is unable to sleep. She sees a therapist for emotional and mental issues surrounding her son and her divorce. She gets very angry and sad, and cries frequently. She is unable to concentrate and focus and has racing thoughts. She has panic attacks and crying spells several times per week. (Tr. 103-08.)

A vocational expert (VE) also testified at the hearing. The VE testified that plaintiff had past work as a cashier (unskilled, light), server (unskilled, light), and customer service clerk (semiskilled, light). The ALJ posed a hypothetical involving an

individual of plaintiff's age, education, and work experience, who was limited to simple, routine, repetitive tasks. She could have only occasional changes in the work setting and work that has little to no interaction with the public, casual and infrequent interaction with coworkers, including no tandem task. The VE testified that such an individual could not perform plaintiff's past work. However, the VE testified that there were other positions in the national economy that such an individual could perform, such as stringer, basket filler, and picking table worker. (Tr. 109-114.)

### III.   DECISION OF THE ALJ

On October 19, 2016, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 61-70.) At Step 1 of the sequential evaluation, the ALJ found that plaintiff had not performed substantial gainful activity since her July 15, 2014 onset date. At Step 2, the ALJ found plaintiff had the following severe impairments: depression and anxiety disorders. At Step 3, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 63-64.)

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations. She was able to perform simple, routine, repetitive tasks. She was limited to occasional changes in the work setting. She was able to have occasional to no direct interaction with the public, casual and infrequent interaction with co-workers, and occasional interaction with supervisors. She could occasionally be off-task up to five percent. (Tr. 65.) Relying on the testimony of a vocational expert, the ALJ found that plaintiff could perform the requirements of certain representative occupations existing in significant numbers in the national economy such as stringer, basket filler, and picnic table worker. The ALJ therefore concluded that plaintiff was not "disabled" under the Act. (Tr. 69.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating

she is no longer able to return to her PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff argues the ALJ erred (1) in formulating her residual functional capacity; (2) in failing to provide specific rationale for rejecting her testimony; and (3) in failing to find her migraine headaches were a severe impairment. The Court disagrees.

### 1. Residual Functional Capacity

Residual Functional Capacity is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of her limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 404.1545(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. Defendant has the burden of proof for an assessment of RFC that will be used to prove that a claimant can perform other jobs in the national economy. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000).

In this case, the ALJ determined that plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations. She was able to perform simple, routine, repetitive tasks. She was limited to occasional changes in the work setting. She was able to have occasional to no direct interaction with the public,

casual and infrequent interaction with co-workers, and occasional interaction with supervisors. She could occasionally be off-task up to five percent. (Tr. 65.) Relying on the testimony of a vocational expert, the ALJ found that plaintiff could perform the requirements of certain representative occupations existing in significant numbers in the national economy such as stringer, basket filler, and picnic table worker.

After considering the record as a whole, the ALJ found that although plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements regarding the alleged severity and limiting effects of those symptoms were not consistent with the overall record evidence. (Tr. 66.) The ALJ found that plaintiff's allegation that her depression and anxiety were so severe that she could not engage in any type of work activity--even simple work activity involving limited contact with others in the workplace--was clearly not consistent with the evidence of record. The ALJ observed that when plaintiff began seeing therapist Denise Morgan in December 2014, she was diagnosed with depression and social anxiety and was noted to have symptoms associated with her impairments. However, Ms. Morgan assigned a Global Assessment of Functioning (GAF) score of 75, indicating "mild" symptoms. (Tr. 66-67.) The ALJ found such a finding inconsistent with plaintiff's testimony that she would not be able to get motivated during the day to get up and perform even simple work activities with limited social contacts. (Tr. 67.) The ALJ also observed that Ms. Morgan noted at their initial visit that plaintiff had been noncompliant with her medication. (Tr. 67.) See, e.g., Julian v. Colvin, 826 F.3d 1082, 1087 (8th Cir. 2016) (claimant's inability to follow a recommended course of treatment detracted from allegations of disability). The ALJ also noted that the record evidence demonstrated that plaintiff's problems appeared to be directly related to marriage, family, and financial stressors. And although there were reports of multiple symptoms initially, plaintiff's mental health appeared to stabilize over time. (Tr. 67.) For example, the ALJ observed that during late December 2014 and early 2015, plaintiff's symptoms included anhedonia, apathy, agitation and irritability, feelings

of despair, worrying, being preoccupied, having an inconsistent affect, and decreased sleep and appetite. (Tr. 67.) The ALJ pointed out, however, that subsequent treatment notes from June 2016 showed that while plaintiff still reported anxiety and depression, she was observed to be pleasant, cooperative, and interested with an appropriate affect. (Tr. 67.) See, e.g., Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (medical record evidence supports the conclusion that claimant's depression was situational in nature, related to marital issues, and improved with medication and counseling). The ALJ noted that Ms. Morgan offered no opinion that plaintiff would be unable to engage in work activity. (Tr. 67.). See, e.g., Bryant v. Colvin, 861 F.3d 779, 784 (8th Cir. 2017) (ALJ rightfully noted lack of any medical provider making allowances for any disability in claimant's care).

The ALJ also noted that records from treating psychiatrist Dr. Notowny did not explain plaintiff's allegation that she could not perform any type of work activity. (Tr. 67.) The ALJ noted that from August 2014 through May 2016, Dr. Nowotny's records showed consistent, mostly normal findings. (Tr. 67.) The ALJ noted that although plaintiff had a depressed mood and flat affect at most visits, she had normal psychomotor activity, good attention, logical and sequential thoughts, no paranoia or suicidal ideation, intact memory functioning, and good insight and judgment. (Tr. 67.) Moreover, although the record shows that in September 2015 plaintiff requested a letter from Dr. Nowotny stating that she could not work due to bipolar disorder and severe mood swings, there is no record evidence that he provided such a letter or that he believed plaintiff could not work due to her impairments. (Tr. 67.) The ALJ also pointed out that in May 2016, plaintiff reported improved mood and sleep except for aggravation with her court case. (Tr. 67.) Based on the above, this court concludes the ALJ appropriately considered all of the record evidence in concluding that it failed to support plaintiff's allegations of disabling symptoms.

The ALJ also found that plaintiff had only mild restriction in her ability to engage in daily living activities. He noted that both her testimony and written function report showed few restrictions in that aspect of functioning. (Tr. 64.) The ALJ noted that plaintiff took care of her own personal needs, took care of her young son when he was in her custody, prepared simple meals, shopped, drove, managed her own money, performed household chores, and used the internet. (Tr. 64.) The ALJ appropriately considered the evidence of plaintiff's reported activities in concluding that her allegations of disabling impairments were inconsistent with the overall record. See, e.g., Reece v. Colvin, 834 F.3d 904, 910 (8th Cir. 2016) (ALJ appropriately considered claimant's daily activities in finding them inconsistent with allegations of being totally unable to work).

The opinion of State agency psychological consultant Steven Akeson, Ph.D., also supports the ALJ's finding that plaintiff was capable of simple, repetitive work with some social limitations. The ALJ gave Dr. Akeson's opinion "some" weight. (Tr. 68.) Dr. Akeson indicated that plaintiff had only moderate limitations in social functioning and in maintaining concentration, persistence, or pace. He opined that plaintiff might perform better in a work environment away from the general public and that she had the ability to perform at least simple repetitive tasks, as well as the ability to likely perform moderately complex tasks. (Tr. 68, 122-23.) In this case the ALJ noted that although Dr. Akeson was not a treating or examining source, and his opinion was rendered prior to additional evidence was received at the hearing level, his findings that plaintiff had only moderate limitations in social functioning and concentration, persistence, or pace were--and remained consistent with--plaintiff's subsequent treatment notes. (Tr. 68, 121-23.) The ALJ considered Dr. Akeson's opinion in the context of the overall record, and it supports the ALJ's conclusion that plaintiff was capable of a reduced range of work despite any difficulties caused by her mental impairments. (Id.) See, e.g., Mabry v. Colvin, 815 F.3d 386, 391 (8th Cir. 2016) (state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating

claimant's RFC); Kamann v. Colvin, 721 F.3d 945, 951 (8th Cir. 2013) (state agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments).

As discussed above, the ALJ considered the medical evidence, as well as Dr. Akeson's opinion in concluding that the overall record failed to support plaintiff's claim that she was unable to work because of her mental impairments. (Tr. 63-68.) Indeed, it is the ALJ's responsibility to formulate the claimant's RFC based on the evidence as a whole—including the medical and non-medical evidence of record. The ALJ met that standard here. See, e.g., Stringer v. Berryhill, 700 F. App'x 566, 567 (8th Cir. Nov. 9, 2017). Here, the ALJ appropriately considered the evidence as a whole in concluding that although the record supported the inclusion of some work-related limitations to account for any difficulties attributable to plaintiff's depression and anxiety, it did not support the allegation that her symptoms were so severe that she could not engage in any type of work activity. Based on the above, this Court therefore concludes the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

2. **Migraine Headaches as a Severe Impairment at Step Two**

Plaintiff also argues the ALJ erred in failing to find her migraine headaches were a severe impairment. She contends the record evidence shows that her migraines significantly limit her physical ability to do basic work activities. The Court disagrees.

At Step Two of the evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of proving her impairment or combination of impairments is severe, but the burden is not a heavy one, and any doubt concerning whether the showing has been made must be resolved in favor of the claimant. Id.; Dewald v. Astrue, 590 F. Supp.2d 1184, 1200 (D.S.D. 2008). "Severity is not an onerous requirement for the

claimant to meet, but it is also not a toothless standard. . . ." Kirby, 500 F.3d at 707. A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(c), 404.1521. An impairment is not severe if it amounts to only a slight abnormality and does not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby, 500 F.3d at 707; 20 C.F.R. § 404.1521(a). Basic work activities concern the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 404.1521(b). Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. Id. The sequential evaluation process terminates at Step Two if the impairment has no more than a minimal effect on the claimant's ability to work. Kirby, 500 F.3d at 707; Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989).

The Eighth Circuit has not expressly ruled on whether an error at Step Two requires reversal. See Rentzell v. Berryhill, Case No. 4:17 CV 3037, 2018 WL 2050559, N.2 (D. Neb. May 1, 2018). Recent cases, including cases from this Court, tend to hold the ALJ's failure to list all the impairments at Step Two harmless, as long as the ALJ adequately discusses the effects of those impairments at the subsequent steps. As long as the ALJ finds one significant impairment at Step Two, and moves on to consider whatever effects plaintiff's other severe impairments might have imposed at Steps Three and Four, then the alleged error is harmless. See Burgess v. Berryhill, Case No. 4:17 CV 2316 ACL, 2018 WL 4457308, at 6 (E.D. Mo. Sept. 17, 2018).

As an initial matter, in her application, plaintiff did not allege disability due to migraine headaches. And as the ALJ pointed out, plaintiff testified at the hearing that she could not work due to severe social anxiety and depression and made no mention of

continuing severe headaches.  (Tr. 68, 80-81, 86-90, 95-96, 101, 103-08).  Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (fact that claimant did not allege a particular impairment in her application is significant, even if the evidence of the impairment was later developed); Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008) (ALJ has no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability).

Although plaintiff did not allege she was disabled due to migraines, the ALJ nevertheless addressed her migraines at length in his decision.  The ALJ observed that although plaintiff was hospitalized in September 2015 for headaches, the cause of the headaches was unclear, and the headaches had not been associated with severe symptoms of depression and/or anxiety or with any neurological abnormalities.  (Tr. 67, 647, 659, 734-97.)  The ALJ noted that during her plaintiff's September 2015 hospitalization, her doctor thought she might be progressing from episodic to chronic migraine headaches.  He also noted she showed improvement with sleep, sinus drainage, and medications.  (Tr. 67, 758, 766.)  The ALJ noted that plaintiff typically obtained relief with sleep, caffeine, and Excedrin, and that she was pain free and without prescription medication upon discharge from her hospitalization.  (Tr. 67, 616, 758, 775.)  See, e.g., Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014) (impairments that are controllable or amenable to treatment do not support a finding of total disability).  The ALJ further acknowledged that plaintiff's headaches worsened following a motor vehicle accident in December 2015.  (Tr. 68, 616, 633, 636, 647.)  In March 2016, plaintiff denied that depression or anxiety were a large component of her headaches.  (Tr. 68, 647.)  The ALJ also observed MRI and CT scans of plaintiff's brain were normal.  (Tr. 68, 659, 739.)  The ALJ pointed out that there had been some association of her headaches with upper respiratory or sinus illness.  (Tr. 68, 633, 647, 758, 767.)  The ALJ also noted that there was no record evidence plaintiff's headaches had progressed to the point of being intractable for long periods of time.  (Tr.

68.) The ALJ noted plaintiff was consistently attentive and oriented with normal memory and cognition upon examination. (Tr. 68, 662, 666, 670, 674, 679, 684, 699, 767, 908.)

Moreover, plaintiff does not point to any evidence to show how her headaches impacted her ability to perform basic work activities or what, if any, additional work-related limitations she believes should have been included in the RFC to account for her headaches. See, e.g., Robson v. Astrue, 526 F.3d 389, 393 (8th Cir. 2008) (while claimant claimed her obesity exacerbated her existing medical infirmities, she did not explain how including her obesity would alter the question posed to the vocational expert). Thus, while the ALJ did not find that plaintiff's headaches were "severe," the ALJ clearly considered all of her impairments, including her headaches, in ultimately concluding that, although her medical symptoms caused some work-related limitations, she was nevertheless capable of performing a reduced range of work.

The Court concludes the ALJ considered the record as a whole in concluding that although plaintiff's medical impairments caused some work-related limitations, she failed to meet her burden to show that they prevented her from all work. See, e.g., McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) ("If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome."). Substantial evidence supports the ALJ's conclusion that plaintiff failed to meet her burden to prove that she was unable to do any work because of her impairments.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/s/ David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 7, 2019.